IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELVIN SMITH, | No. C 10-4463 CW |
| Plaintiff, | ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kelvin Smith moves for summary judgment or, in the alternative, requests that the case be remanded to the Commissioner of the Social Security Administration (SSA) for further proceedings. Defendant Michael Astrue, in his capacity as the Commissioner, opposes the motions and cross-moves for summary judgment affirming the Commissioner's denial of Supplemental Security Income (SSI). The Court DENIES both motions for summary judgment, GRANTS Plaintiff's motion to remand, and REMANDS the case to the Commissioner for further proceedings.

BACKGROUND

I.  Procedural History

Plaintiff filed an application for SSI on August 29, 2007, claiming that he had been disabled since June 1, 1993. AR 74. After this claim was denied he requested a hearing, which took place December 1, 2009 before an Administrative Law Judge (ALJ). The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was capable of performing jobs that exist in the national and local economy. Plaintiff

filed a Request for Review of the Hearing Decision; the Appeals Council denied it. Plaintiff now moves for summary judgment or, in the alternative, remand for further proceedings. Defendant opposes the motions and cross-moves for summary judgment to affirm the Commissioner's denial of SSI.

II. Plaintiff's Personal History

Plaintiff was born on May 25, 1963, and has two young children. AR 37, 38. He graduated from high school and, in 1981, attended a trade school for electronics training. Id. He has some history of substance abuse but has been in recovery since 1986. AR 408. He completed a year-long uncertified training at a school of ministry to become a worship leader. AR 39. He also worked as a forklift operator, and most recently, from 2005 to 2006, was a customer service trainer for at-risk youth. AR 40-43. According to his testimony, Plaintiff held an unpaid position as pastor and executive director at a church between 1997 and 2006. AR 42-43.

III. Plaintiff's Medical History

Plaintiff began seeing doctors at Kaiser Redwood City in February 2007, complaining of back pain that worsened with prolonged sitting or driving, but no numbness or weakness. AR 264, 266. He stated that the onset date of his back pain was in 2006, when he was thrown down by police after being mistaken for a suspect. AR 258, 264. Medical records from 2007 list Plaintiff's ailments as chronic pain, neck pain, low back pain, cervical radiculopathy, sleep apnea disorder, and degeneration of lumbar invertebral disc. AR 249-252. Throughout 2007 he treated his symptoms with physical therapy, Motrin, Vicodin, ice and a TENS

machine. AR 258, 266, 267, 269-272. He also reported visiting a chiropractor and receiving acupuncture. AR 264, 356.

In 2007 Plaintiff had a MRI at Kaiser which showed a posterior disc bulge at C5-6, lumbar spondylosis at L3-4 and minimal spondylosis of L5-S1. AR 276, 277. He had a second MRI in September 2007, which showed cervical cord abnormality at L2-3 and bulge and hypertrophy at L5 but there was no change to the treatment at that time. AR 284-286. In March 2008 Plaintiff was given an epidural steroid injection to control the pain in his back. AR 421-422. While Plaintiff has usually reported his level of pain at seven or eight out of ten, at some doctor visits he noted improvement due to use of the TENS machine, exercise and Vicodin. AR 274, 428, 360, 369. He also reported periods when he was able to do household chores and walk up to a mile every day. AR 274. However, during other doctor visits he reported that the medication was not controlling the pain, or it had gotten worse. AR 348, 355, 428, 604, 669.

In November 2007 Plaintiff was examined for the SSA by Dr. Lightfoot, who found him to have a light RSF with postural limitation. AR 288-294. An MRI performed in February 2008 found the condition of Plaintiff's back largely unchanged, except that bulging at the L2-3 level was "slightly worse than the last examination." AR 309. Throughout this time Plaintiff was primarily treated by Drs. Hom and Hutchison at Kaiser, as well as various physical therapists, and he was not working. In 2008 he visited Kaiser twenty-one times and at one point attended a series of chronic pain management group meetings there. AR 547, 661, 662. In May 2008, Plaintiff was examined by Dr. Gonick-Hallows, a

3

consulting psychologist, who found some mild deficits in his short-term memory and slight impairments in occupational function, but no psychiatric diagnosis.  AR 407-411.

Plaintiff's two treating physicians, Drs. Hom and Hutchison, each filled out questionnaires assessing his ability to function. Dr. Hutchison, his pain management provider, said that Plaintiff could not lift, push or pull more than ten pounds and had only partial capacity for continuous sitting, standing, overhead work and squatting.  Dr. Hutchison opined that Plaintiff had full use of his hands.  AR 553.

His primary treating physician, Dr. Hom, reported that Plaintiff suffered from serious limitations.  He opined that Plaintiff would need to take unscheduled breaks lasting ten to fifteen minutes every fifteen to twenty minutes and alternate between sitting and standing at will.  He further asserted that Plaintiff could only sit, stand or walk for less than two hours total during an eight hour work day and would miss more than four days of work per month due to his impairments.  AR 548, 549.  He noted that Plaintiff "occasionally" suffered from depression and anxiety and opined that he was incapable of even low stress jobs. AR 548.

IV.  Proceedings Below

At the hearing Plaintiff testified that he lives in a three bedroom apartment with a friend and her son and is able to do his own cooking, cleaning, and laundry.  AR 50.  He testified that he is taking online college courses but sometimes watches them on videotape because he does not feel well enough to participate at the correct time.  AR 52-54.

4

Lynda Berkly, a Vocational Expert (VE), testified at the hearing that an individual capable of performing sedentary work who can only walk and stand for up to two hours in a day would be able to work as an assembler of optical goods, listed in the Dictionary of Occupational Titles (DOT) as code 713.684-014 or a bench inspector of electronic components, listed in the DOT as 726.684-014, even with mild restrictions on concentration, persistence and pace. AR 66. However, she testified that a moderate limitation on concentration, persistence and pace would eliminate all sedentary production type jobs. She asserted that both of these positions offer a sit/stand option. AR 66. Upon questioning by Plaintiff's attorney, the VE testified that, although the DOT does not state that either position has a sit/stand option, based on her professional experience they do. AR 70-71. She based her opinion on job site analyses, including a survey at Lens-Crafters carried out two years earlier. Id.

In his February 17, 2010 decision, the ALJ addressed the five-step evaluation process outlined in 20 C.F.R. § 416.920 and found that Plaintiff was not disabled within the meaning of the Social Security Act. AR 10. At step one of the five-part analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. AR 12. At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and cervical spine; sleep apnea; and myofascial pain syndrome are severe impairments within the meaning of the regulations. Id. At step three, the ALJ found that Plaintiff's impairments were not severe enough to meet or

5

medically equal any of the impairments listed in Appendix 1 of the regulations.  Id.

Prior to steps four and five of the analysis, the ALJ weighed the medical and other evidence in the record to assess Plaintiff's residual functional capacity (RFC).  He found that Plaintiff has physical impairments that can be reasonably expected to produce the symptoms alleged.  AR 13.  However, he found that Plaintiff's representations as to the intensity, persistence and limiting effects of these symptoms were not credible or substantiated by objective medical evidence.  AR 13, 15.  He also largely rejected Dr. Hom's conclusions as to the extent of Plaintiff's impairments, finding that the doctor's own reports failed to reveal the clinical abnormalities that one would expect to find with a disability.  AR 14-15.  He noted that the limitations provided by Dr. Hutchison, Plaintiff's pain management provider, were more consistent with the objective medical evidence.  AR 15.  The opinion of Dr. Gonick-Hallows, the psychological consultant, was afforded the most weight by the ALJ, along with the objective medical evidence and Plaintiff's admitted functional ability.  Id.

The ALJ thus found that Plaintiff has the RFC to perform sedentary work with some accommodations.  AR 12-13.  Specifically, Plaintiff must be able to alternate between sitting and standing as needed; not climb ropes, ladders or scaffolds; and only occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl.  AR 12-13.  He further found that Plaintiff has a mild limitation in the ability to maintain concentration, persistence and pace.  AR 13.

Because the ALJ found that Plaintiff would be unable to perform either his past relevant work or the full range of sedentary work, at step five he determined the extent that his additional limitations erode the unskilled sedentary occupational base. Relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing sedentary jobs such as those identified by the VE. AR 16.

Plaintiff now moves for summary judgment on the grounds that the ALJ erred because he 1) failed to provide adequate reasons for discounting the treating physician's opinion and 2) failed to resolve the conflict between the testimony of the VE and the requirements of the jobs listed in DOT.

## DISCUSSION

I.  Legal Standard

The Commissioner's decision to deny benefits "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989); Brawner v. Secretary of Health & Human Services, 839 F.2d 432, 433 (9th Cir. 1987), quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986). "Substantial evidence means more than a mere scintilla but less than a preponderance." Davis v. Heckler, 868 F.2d 323, 325–26 (9th Cir. 1989)(quotations omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be upheld even when there is evidence on the other side, Hall v. Secretary of Health, Ed. and Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the evidence

7

is susceptible of more than one rational interpretation, <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ. <u>Walker v. Matthews</u>, 546 F.2d 814, 818 (9th Cir. 1976). A court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).

II. Discussion

A. Opinion of the Treating Physician

The ALJ states in his findings that he afforded "little weight to the medical source opinion of Dr. Hom as it is not supported by the substantial weight of the objective medical evidence." AR 14. Plaintiff argues that the ALJ improperly disregarded Dr. Hom's opinion when determining that Plaintiff's RFC was sedentary with additional limitations because he failed to provide any specific rationale for his decision.

Generally, greater weight is given to a treating physician's opinion because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." <u>Magallanes</u>, 881 F.2d at 750; <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987). Although the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, an ALJ must provide "specific and legitimate reasons for rejecting the opinion of the treating

8

physician." Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating an interpretation thereof, and making findings. Magallanes, 881 F.2d at 751.

Here, the ALJ's statement of his reasons for rejecting Dr. Hom's report was insufficient. "Merely to state that a medical opinion is not supported by enough objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (quotation marks omitted).

In his cross-motion, Defendant argues that Dr. Hom based his opinion on subjective reports that the ALJ had determined not to be credible. A treating physician's opinion about a claimant's pain can be disregarded to the extent that it is based on the claimant's unreliable self reporting. Tommasetti v. Astrue, 533 F.3d 1035, 1040-41 (9th Cir. 2008).

The ALJ in this case fails to provide any detailed findings to support his decision. While he asserts that he does not find Plaintiff's statements completely credible as to the intensity, persistence and limiting effects of his impairment, he does not cite this in support of his decision to discount Dr. Hom. AR 13. The ALJ also notes the conservative nature of the treatment and Plaintiff's ability to engage in other daily activities as inconsistent with disabling pain. However, he does not accuse Plaintiff of malingering, despite finding his functional abilities

9

"to be in excess of his alleged limitations." AR 15. Rather, he gives Plaintiff "all benefit of the doubt." Id.

Despite Dr. Hom's assertion that Plaintiff would be incapable of even "low stress" jobs, his records do not support a finding of substantial mental or psychological limitations and he performed no relevant tests. His records indicate that this opinion was based on the Plaintiff's statement that he could "not function with any stress." AR 548. Defendant thus argues that the ALJ was justified in giving the most weight to the report of Dr. Gonick-Hallows, the consulting psychologist. This rationale was not given by the ALJ to explain his decision to discount the treating physician in favor of an examining doctor.

Where the ALJ failed to provide clear and convincing reasons for discounting the opinion of the claimant's treating physician, courts have accepted the physician's uncontradicted testimony as true and awarded benefits. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1988). Here, however, the ALJ has cited some factors that may be sufficient to discount the treating physician's opinion. Therefore, the Court DENIES summary judgment and REMANDS for further proceedings to determine whether the treating physician's opinion can properly be discounted in this case.

B. Testimony of the Vocational Expert

Plaintiff contends that the ALJ erred during the hearing by failing to ask the VE whether her testimony departed from the DOT and to explain any contradictions. He further asserts that the ALJ was required to explain in his written decision any conflicts between the VE's testimony and the DOT. Social Security Ruling 00-4p requires that ALJs identify and obtain a reasonable

10

explanation for any conflicts between occupational evidence provided by VE's information and the DOT. It also requires that they explain in their decision how any identified conflict was resolved. SSR 00-4p. During the hearing in the instant case, the VE asserted that both the positions of optical assembler and bench inspector allow for a sit/stand option, which is not part of the DOT descriptions. AR 66. While the ALJ never asked for an explanation, Plaintiff's attorney elicited a response from the VE that she based this opinion on her professional experience, including a two-year-old study at Lens crafters. AR 70, 71.

The Ninth Circuit has allowed that failure to inquire about conflicts with the DOT could be deemed harmless where there were "no unresolved potential inconsistenc[ies] in the evidence." Massachi v. Astrue, 486 F.3d 1149, 1153, n.19 (9th Cir. 2007) (quotation marks omitted). The purpose of the rule is to ensure that the record is clear as to why the ALJ relied on the VE's testimony, particularly in cases where the VE's testimony conflicts with the DOT. Id. Expert testimony that contradicts the DOT may be upheld where there is persuasive testimony supporting the deviation. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see also, Tommasetti, 533 F.3d at 1042.

Here, the ALJ fails to mention the departure in his written decision and, in fact, says that the occupations cited are consistent with the DOT title without further discussion. However, because the VE explained the basis for her departure from the DOT, the Court finds no prejudice from this error.

11

CONCLUSION

The ALJ's decision is vacated and REMANDED for further proceedings to consider whether there are substantial grounds for rejecting Dr. Hom's opinion.

IT IS SO ORDERED.

Dated: 11/3/2011

CLAUDIA WILKEN
United States District Judge

12